McKinney, J.
delivered the opinion of the court.
It appears from the pleadings and proof in this cause, that on the 7th of December, 1S48, the defendants Smith &■ Bul-lard, made their promissory note payable to George R. Price for $700, for money loaned and advanced by the latter to the former, for the use of the steamboat Clipper, of which they were then owners. And as a further security for the payment of said note, said Smith & Bullard also executed an instrument of writing, by which they transferred said steamboat to Price, as a pawn or pledge, until the debt should he paid, which writing was not registered. Posses *397 sion of the boat was immediately delivered to Price, in pursuance of said transfer. In January, 1849, said boat was seized and taken out of Price’s possession, by the sheriff, by virtue of several attachments, issued in favor of persons claiming prior liens upon the boat, under the act of 1833, ch. 35, sec. 1. After the levy of said attachments, and while the boat was in custody of the law, Pi ice transferred said note of $700, to the complainant, by indorsement in writing, in the following words: “I transfer the within note to W. A. Johnson, without any recourse on me "whatever.
“George R. Price.”
On the 13th of January, 1849, Smith & Bullard conveyed said boat to the defendant Coltart, in trust, to secure debts amounting to about $1750. Subsequent to this, judgments were obtained, by confession, against Smith & Bullard, in favor of the defendants, Coltart & Hardcastle, for considerable amounts, upon which executions issued and were levied on said boat; whereupon the complainant filed the pres bill, in which he claims that, as assignee of Price, he h® lien upon said Boat, prior and better than the liens of i-ther the attachment or execution creditors, which he seekl to enforce for the satisfaction of the note before mentioned.
The defendants allege that, by virtue of the mere assig? ment of the debt, secured by the pledge, the complainant has no lien upon said boat whatever. And the question for our determination is, whether or not the assignment by Price, the pawnee, to the complainant, of the debt secured by the pawn, unaccompanied with delivery of the pawn or pledge, either actual or constructive, carried with it, and vested, in the complainant, the pawnee’s lien upon said boat?
No express adjudication upon this question has been produced ; but, upon the general principles, applicable to this peculiar species of bailment, we think it presents no serious difficulty.
*398 A pledge or pawn is a bailment of personal property, as security for some debt or engagement. Story on Bailments sec. 286. It is a lien arising by contract, created, limited, and enlarged, at the will of the contracting parties. Cross on Liens, 63. Mr. Story, following the Roman law, lays it down, that nothing but what is capable of delivery to the pledgee, is deemed to be the proper subject matter of a pledge. Story on Bailment, sec. 290, m. It is of the essence of the contract that there should be an actual delivery of the thing to the pledgee. Until the delivery of the thing, the whole rests in an executory contract, however strong may be the engagement to deliver it; and the pledgee acquires no right of property in the thing. What will amount to a delivery of the thing is, in many cases, matter of law. There need not be an actual manual delivery of the thing. It is sufficient, if there are any of those acts or circumstances which, in construction of law, are deemed sufficient to pass the possession of the property. Id. sec. 297. It is also of the essence of the contract, that the thing should be delivered as a security for some debt or engagement. Id. sec. 300. In virtue of the pawn, the pawnee acquires a special property in the thing, and is entitled to the exclusive possession of it, during the time and for the objects for which it is pledged. Id. 303.
A pawn is a mere collateral security for the payment of the debt, and therefore the pawnee may proceed personally against the pawner for the recovery of his debt, without selling the property pledged. Cross on Liens, 69. 2. Kent’s Com. 586. If the pawner make default in payment at the stipulated time, the pawnee has his election to file a bill in equity to have a sale under a decree of foreclosure; or he may sell, without judicial process, upon giving reasonable notice to the pawner to redeem the pledge. 2. Kent’s Com. 582.
He may also assign over his interest in the pledge, and the assignee will take it under all the responsibilities of. the orig *399 inal pawnee. 2. Kent’s Com. 579. Story on Bailment, sec. 324-327. Or lie may transfer his interest conditionally, by way of pawn to another; and the assignee will be entitled to hold the pledge until the debt of the original owner is discharged. Ibid.
From these general principles it is clear, that this species of lien can be created in no other way than by a delivery of the property given in pledge; and that without delivery and possession, the pawnee can acquire no right to the property whatever ; and has no security for his debt. If, then, the security or lien of the pawnee exists only in virtue, and by force of his possession of the property pledged, does it not follow, of 8'ecessity, that, in order to transfer such security or lien to a jhii’d person, the assignment of the debt, secured by the pledge, must be accompanied with a delivery and possession of the pledge?
The assignment can have no other effect than to place the assignee in the shoes of the pawnee, but in no other or better condition ; and whatever is required by law to create or consummate the right of the pawnee, is equally necessary to consummate the right of the assignee. As between the original parties in this case, the failure of the pawner, for any cause, to have delivered the pledge, would have left the pawnee wholly without any lien or security for the note in question; so, upon the assignment of said note, the failure, for any cause, to deliver the pledge to the assignee, leaves him in like manner without any lien or security for the debt. This would necessarily be the result, even if it were apparent, that it was the intention and agreement of the parties that the' pledge should accompany the transfer of the debt; though, in the present case, no such intention or agreement is established, either by the terms of the indorsement upon the note, or proof in the cause.
But it is argued, that, by analogy to a mortgage, the lien.or *400 security of the pawnee passes, by operation of law, to the assignee upon the transfer of the debt secured by the pawn or pledge. The authorities show very clearly that no such analogy exists, because of 'the difference in the nature of the securities. See Story on Bailment, sec. 287. Cross on Liens, 72-73. By a mortgage of goods the legal title passes to and vests in the mortgagee. But in a pledge, the delivery vests nothing but the bare custody ; the general property remains in the pawner; only a special property rests in the pawnee, or a right to detain the pledge for his security; which is discharged or extinguished by payment or tender of the debt, The essential distinction is, that, in the case of a mortgage, the right passes by the conveyance, and possession of the property is not essential to create, or support the title. But¿ in the case of a pledge, the right is created and passes only by delivery or possession of the property pledged; and as the Men cannot exist in favor of the pawnee, without possession of the pledge ; so neither can it pass to the assignee of the debt, without being accompanied with delivery of the pledge.
- It is further argued, that the assignment of the debt, to secure which the pledge was given, without delivery of the pledge to the assignee, does not discharge or waive the paw-nee’s lien on the property; that his right remains, and that he becomes, by reason of his assignment of the debt, the agent of the assignee, and his possession of the pledge, is the possession of the assignee.
There is no doubt that, by the agreement of the parties, the .pledge may be deposited in the hands of a third person, instead of being delivered to the pawnee; and such person will be considered as the agent or servant of the pawnee, for keeping possession of the pledge. And it would seem that the pawner himself might be constituted such agent. Story on Bailment, sec. 299. Cross on Liens, 65. 14. Pick. R. 497. And it would also seem to follow, that upon the assignment *401 of the pledge, the pawnee might be constituted the agent of the assignee, to hold possession of the pledge for the latter. But it is clear, that no such contract of agency can arise by implication of law; we have already seen that the lien of a pledge, as between the pawner and pawnee, or as between the pawnee and his assignee, can only arise out of a contract between the parties, and not by operation of law. In the present case there is no evidence of any understanding or agreement that the pawnee should retain the pledge for the assignee; the contrary, indeed, may be reasonably inferred from the fact, that, previous to the assignment of the debt, the property had been seized and taken out of the pawnee’s possession.
The assignment of the debt secured by the pledge, under all the circumstances of the present case, and being made without any liability whatever, on the part of the assignor, might give rise to various questions of interest. Did it, or not, ipso facto, operate as a waiver or discharge of the lien? Or might Jhe pawnee still maintain a bill, making the as-signee a party with the pawner, to enforce the lien, by a decree of foreclosure, for the benefit of the assignee? Or might the assignee maintain a bill, making the pawnee a party with the pawner, to enforce, in his own favor, the pawnee’s lien, supposing it to continue, and that nothing, arising out of the contract of assignment, precluded him from asserting such right?
And as respects the rights of the pawner, in a case like the present, questions of no less interest, or difficulty, might arise. If the pawnee has assigned the debt, without any recourse against him whatever, and still retains possession of the pledge, will not the assignee be regarded as having taken the note on the personal credit of the pawner? and if so, will the lien of the pawnee be considered as discharged, and the pawner be entitled to recover the pledge from the pawnee- *402 without payment or tender of the debt, which the pawn was intended to secure? If this be not so,' how, and to whom, must the tender of payment be-made? Shall it be to the pawnee, who has parted with tíre note, for a valuable consideration received, and without liability to the assignee? Or must payment or tender be made to the assignee, who has not possession of, and, therefore, cannot re-deliver the pledge?
Other questions might be suggested; but those already stated, no one of which calls for a decision in the present case, are sufficient to evince the propriety and necessity of adhering to the principle above stated, that no lien or right of property in the thing pledged, passes to the assignee, unless the assignment of the debt intended to be secured by the pledge, be accompanied with a delivery of such pledge.
In this view of the case, the decree of the chancellor is erroneous.
Decree reversed.